# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

ANDREW WIGNER,

            Plaintiff,

-vs-                                    Case No.  6:10-cv-1868-Orl-31GJK

COMMISSIONER OF SOCIAL
SECURITY,

            Defendant.

_____

# REPORT AND RECOMMENDATION

## TO THE UNITED STATES DISTRICT COURT:

Andrew C. Wigner (the "Claimants") appeals to the District Court from a final decision of the Commissioner of Social Security (the "Commissioner") denying Claimant's claim for reinstatement of benefits. *See* Doc. No. 1.  Claimant was previously determined to be disabled as of July 1, 1998, due to depression and chronic fatigue syndrome.  R. 28, 91, 170; Doc. Nos. 15 at 2; 18 at 1.  On June 2, 2002, the Commissioner determined that Claimant had not demonstrated medical improvement and Claimant's benefits continued based upon the treatment records and opinions of Claimant's treating psychiatrist Dr. Stephen Oh.  R. 610-11.  On October 27, 2005, the Commissioner determined that Claimant demonstrated medical improvement and was no longer disabled.  R. 91-92.  Thus, the Commissioner terminated Claimant's benefits.  R. 61-62, 67-70.

Claimant challenged the Commissioner's decision to terminate Claimant's benefits, and on July 13, 2007 and September 10, 2008, hearings were held before Administrative Law Judge

Edward Babilonia (the "ALJ"). R. 829-96. On December 3, 2008, the ALJ issued a decision finding that, as of October 1, 2005, Claimant was no longer disabled. R. 25-37.[1] On August 27, 2010, the Appeals Council denied Claimant's request to review the ALJ's decision. R. 11-20. On December 13, 2010, Claimant appealed the final decision of the Commissioner to District Court. Doc. No. 1.

On appeal, Claimant argues that the final decision of the Commissioner that Claimant ceased to be disabled as of October 1, 2005, is not supported by substantial evidence and should be reversed for further proceedings because: 1) the ALJ failed to state what weight was given to the various medical opinions of record (Doc. No. 15 at 8-11); 2) the Appeals Council failed to apply the correct legal standards to Dr. Oh's March 10, 2009 opinion (Doc. No. 15 at 16-18); and 3) the ALJ's finding that medical improvement occurred as of October 1, 2005 is not supported by substantial evidence (Doc. No. 15 at 12-16). Doc. No. 15 at 2-18. For the reasons more fully discussed below, it is recommended that the Commissioner's decision be **REVERSED and REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) because the final decision is not supported by substantial evidence.**

I. <u>BACKGROUND.</u>

The dispositive issue in this case is whether the ALJ erred by failing to weigh the various medical opinions of record and, therefore, the Court will tailor the medical and administrative history to that issue. Claimant was born on October 17, 1960, and has earned a Bachelor of Arts in Business Administration. R. 95, 123, 149-54, 881-84. Claimant has past relevant work

---

[1] The ALJ also found that Claimant's chronic fatigue syndrome was not a severe impairment based upon the opinion of a non-examining physician. R. 32.

experience as an advertising sales representative and as a trust representative for a bank.  R. 117-18, 149-54.

    A.  Treating Physicians.

On December 20, 1989, Claimant was evaluated by doctors at the Mayo Clinic in Jacksonville and found to be severely depressed with disabling worry and pessimism.  R. 222.  Claimant was diagnosed with dysthymia and probable somatoform disorder.  R. 22.  Claimant was referred for psychiatric treatment.  R. 222.

    1.  Dr. Oh – Psychiatrist - 1990-2009.

From 1990 through March of 2009, Claimant's primary treating psychiatrist was Dr. Stephen Oh.  R. 231-294, 624-25, 685-708, 803-804.  The record contains treatment records which show that Dr. Oh has treated Claimant on a least a quarterly basis since 1990.  R. 231-294, 624-25, 685-708, 803-804.  On July 6, 1999, Dr. Oh provided a medical source statement wherein he diagnosed Claimant with severe depression and chronic fatigue syndrome ("CFS").  R. 444.  Dr. Oh described Claimant's symptoms as depression, decreased energy and motivation, feeling anxious and helpless.  R. 444.  Dr. Oh stated that Claimant's quality of thinking was relevant and coherent, his concentration was impaired, but Claimant's orientation and memory were good.  R. 444.

On October 11, 1999, Dr. Oh provided the following opinion:

> [Claimant] has been under my care since February of 1990 for severe depression.  At that time he had a complete medical work-up at the Mayo Clinic in Jacksonville.  He was diagnosed with depression and referred to my office.  He has been under my continuous treatment with antidepressants and out-patient counseling.  He was having ongoing problems with tired feelings and sleep difficulties.  He also has had continuous symptoms of depression.  Because of increasing fatigue and depression, he was

> unable to continue working. Since he stopped working, his
> depression became even worse. He was <u>diagnosed with [CFS]</u> by
> his family physician <u>after numerous tests to rule out any other</u>
> <u>physical problems</u>. He has been under continuous out-patient
> psychiatric treatment with me. However, [Claimant]'s response
> has been rather poor and he is unable to maintain any gainful
> employment at the present time. . . . Currently, he is still severely
> depressed and unable to maintain gainful employment.

R. 264 (emphasis added). Dr. Oh's 1999 opinion was utilized in the Commissioner's original

determination of disability. R. 134.

On October 5, 2005, Dr. Oh provided a Treating Source Mental Health Report which

opines that Claimant's: mood and affect are anxious and depressed; quality of thinking is

relevant, coherent, and there are no delusional ideations; concentration, orientation, and memory

are good; and diagnosis is panic disorder and major depression, recurrent. R. 624-25. Dr. Oh

also stated that Claimant is competent to manage his own funds if benefits are reinstated. R. 625.

On March 10, 2009, after the ALJ's decision was issued, Dr. Oh submitted the following

opinion:

> I have been treating [Claimant] for Major Clinical Depression and
> Anxiety/Panic Disorder since 1990. Throughout most of the
> intervening years, I have been seeing him in person on at least a
> quarterly basis to monitor his health status. Through medication,
> we have been able to eliminate, for the most part, his Panic
> Disorder and mitigate his severe Depression to a certain extent.
> But, despite these improvements he continues to suffer with
> unrelenting fatigue. I have prescribed [Claimant] the maximum
> safe dosage of the stimulant Dexedrine for several years, but this
> only seems to help with his energy and focus for a few hours per
> day at most. This allows him to perform only the most basic tasks
> needed to get by (food preparation, mundane chores, paperwork,
> etc.) His [CFS] continues to prevent him from normal functioning
> on a daily basis. [Claimant's] lack of energy, post-exertional
> malaise and disabling fatigue continue to prevent him from any
> semblance of a social life, let alone the ability to work for a living.

It has come to my attention that after losing his benefits over 3 years ago, [Claimant's] latest appeals hearing resulted in an unfavorable decision for his case. He asked me to write to [the Appeals Council] to intervene on his behalf. It is my opinion that his health is in such a state that he is not even prepared to work on a part-time basis.

[Claimant] has shown me that the [ALJ] relied heavily on 2 medical "experts" testifying by phone, without ever meeting [Claimant in person]. The Rheumatologist testified that she could not concur with a diagnosis of [CFS] with out [sic] ruling out Somatoform Disorder. As [Claimant's] treating Psychiatrist for almost 20 years, <u>I can and have ruled out a Somatoform Disorder</u>.

[Claimant's] Sleep Study resulted in a diagnosis that he has Sleep Apnea. The treatment for this is use a Continuous Positive Airway Pressure (CPAP) machine when sleeping. Although [Claimant] has reported some improvement in sleep quality, the <u>CPAP unit has not helped his level of fatigue</u>.

It is my opinion that [Claimant] has severe [CFS] and he is permanently and totally disabled because of it.

R. 803-04 (emphasis added). Thus, Dr. Oh's March 10, 2009 opinion states that Claimant suffers from Major Clinical Depression, Anxiety/Panic Disorder, and CFS. R. 803. Claimant's Anxiety/Panic disorder is controlled with medication and Claimant's Depression has improved somewhat with treatment, but Claimant still suffers from debilitating fatigue. R. 803-04. Dr. Oh rejects or takes substantial issue with the opinions of two non-examining physicians, who testified at the hearing before the ALJ. R. 803-04. More specifically, based on his 20 years of treatment, Dr. Oh opines that Claimant does suffer from severe CFS and he has ruled out a Somatoform Disorder. R. 803-04.[2]

---

[2] The ALJ did not have the benefit of Dr. Oh's latest opinion before issuing his decision. R. 25-38.

2.      Dr. Chaim – 1998-1999.

Claimant was treated by Dr. Hana Chaim from December 1, 1998 through October 18, 1999. R. 295-422. On September 24, 1999, Dr. Chaim provided the following opinion:

> [Claimant] came to me after suffering a relapse as a result of his [CFS]. I ordered blood work to rule out the other medical conditions which could account for the severe fatigue he has endured. We ruled out other common causes for his extreme fatigue, but I found significant medical signs and laboratory findings showing [Claimant] has a medically determinable impairment. Results which bear this out include: Tender Lymph Nodes, Neurally Mediated Hypotension, Persistent Neurocognitive Impairment, IBS, Amino Acid Imbalance, and extremely low hormone levels of Testosterone, Melatonin, DHEA and Adrenal Cortisol levels which would severely limit his ability to function in a normal manner.
>
> We are continuing to work with [Claimant] to treat his symptoms (as there is no cure) with nutritional support and rest therapy in hopes of allowing his system to recover in order to perform work related activities. We are continuing to monitor his progress and observe any other negative health indicators. . . . [C]laimant is barely well enough to perform activities of daily living such as cooking, cleaning etc. around the house. He certainly is not well enough to work at this time. He doesn't have the cognitive functioning power to handle basic problems that arise in a work environment and the stress and physical activity involved in most jobs would only exacerbate [Claimant's] symptoms. Work related activities would prove counterproductive to his recovery at this time.

R. 299 (emphasis added). Thus, Dr. Chaim opined that Claimant suffers from severe CFS based on laboratory findings and Claimant is unable to perform work related activities. *Id.* Dr. Chaim's opinion was utilized in the Commissioner's original determination of disability. R. 134. The record does not contain any updated treatment records or other medical opinions from Dr. Chaim.

3. Dr. Wahba – 1999 – 2004.

On December 17, 1999, Claimant presented to Dr. Wahba W. Wahba "with a chief complaint of excessive daytime sleepiness." R. 488. Dr. Wahba diagnosed Claimant with CFS, which "may give him the sensation of tiredness together with all the medication he is taking." R. 488. Dr. Wahba's treatment notes reflect that Claimant was taking Zoloft, Wellbutrin, Dexedrine, Armor, Guaifensin, Ambien, testosterone, magnesium sulfate, and vitamin B-12. R. 488. After conducting laboratory testing, Dr. Wahba diagnosed Claimant with significant Obstructive Sleep Apnea and intermittent insomnia. R. 485-87. Dr. Wahba prescribed a nasal Continuous Positive Airway Pressure ("CPAP") machine for therapy. R. 485. On March 22, 2004, Dr. Wahba's treatment record provides that Claimant is sleeping well at night and his CFS "has improved." R. 482.

4. Dr. Robinson – 2000 – 2002 and 2007 - 2008.

Claimant received treatment from Dr. S. Todd Robinson from June 21, 2000 through November 13, 2002, and then again from November 27, 2007 through at least April 7, 2008. R. 502-609, 729. On April 7, 2008, Dr. Robinson offered the following opinion:

> [Claimant's] diagnosis list includes: obstructive sleep apnea, hypochlorhydraia, fatigue abnormal hormone level time 2 (growth hormone and testosterone and no DHEA) severe insomnia, abnormal silica tursa by MRI.
>
> [Claimant] has had many labs that are normal but the ones we note that have been abnormal in the past include: hypochlorhydria by Heidelberg gastric analysis in 2000, Obstructive sleep apnea with test in 2003, nanobacteria positive in 2002, nk cells that are low in count and activity in 4/2001 and then low in activity in 2002, low testosterone in 8/2000, elevated magnesium in 8/2000, low platelet counts on numerous occasions, low IGF-1 in 3/2001 and 6/2001,

low uric acid levels in 3/2001, abnormal anabolic catabolic test in 2001 that was ½ normal, an abnormal cotrysn stimulation test with failure to double baseline Cortisol production 6/2000, citric acid cycle metabolites that are low in 2001, specifically alpha-ketoglutarate and B hydroxyl B methyl glutaric acid, and above average extraction of O2 from veinous and arterial blood gases done 3-4 time.

His most current labs show low growth hormone, DHEAS, low protein levels in the serum, Epstein Bar antibodies IGG, mild anemia, and elevated MCH on the blood count. Other labs were pending at the time of this report.

It is my opinion that [Claimant] has enough vague abnormalities to document that there is a problem but as would be expected in a syndrome like this, it will be nonspecific. There is evidence from the labs that the hypothalamus, pituitary, adrenal axis is definitely involved and this could and would correlate with [CFS].

R. 729. Thus, Dr. Robinson opined that his laboratory testing indicated that Claimant has CFS, among other diagnoses. R. 729.

      B.      Consultative Examining Physicians and Psychologists.

      1.      Dr. Carpenter – May 22, 2006.

On May 22, 2006, Claimant presented to Dr. David W. Carpenter for a disability evaluation. R. 670-75. Claimant reported that he has a history of major depressive disorder and CFS. R. 670. Claimant stated that he believed he was stable on his current medication. R. 670. Claimant reported that he can conduct household chores for 4 hours, but the following day he will experience significant fatigue. R. 670. Claimant's medications were Dexedrine, Zoloft, and Wellbutrin. R. 670. After physical examination, Dr. Carpenter diagnosed Claimant with Major Depression and CFS. R. 672. However, Dr. Carpenter also stated:

[C]laimant has no motor or sensory deficits by physical exam. Grip strength and fine manipulation skills are within normal limits at both upper extremities. The [C]laimant ambulates in normal

> heel to toe fashion. He is steady without assistance. His balance is
> good. The [C]laimant does not become fatigued during the
> physical exam or interview process.

R. 672. Thus, Dr. Carpenter did not find any specific functional limitations. R. 672.

### 2. Dr. Graham, Ph.D. – October 2, 2007.

On October 2, 2007, Dr. Malcolm J. Graham, III, Ph.D. conducted a consultative psychological examination of Claimant. R. 709-14. Dr. Graham's mental status examination revealed the following: appropriate mood and affect, rational and coherent quality of thinking, good concentration, orientation, and memory, and no behavioral indications of anxiety, depression, or thought disorder. R. 710. Dr. Graham diagnosed Claimant with an Axis I of Major Depression, mild to moderate; no Axis II diagnosis, an Axis III diagnosis of CFS by report, and Global Assessment of Functioning score of 65-75. R. 711. Dr. Graham opined that Claimant's prognosis is guarded. R. 711.

Dr. Graham also completed a Medical Source Statement of Ability to Do Work-Related Activities (Mental). R. 712-14. Dr. Graham opined that there were no mental limitations in Claimant's ability to perform work-related activities. R. 712-14.

### 3. Dr. Barber – October 31, 2007.

On October 31, 2007, Dr. Alvan Barber, a neurologist, completed a consultative evaluation of Claimant. R. 715-727. Claimant reported that he is unable to work due to extreme fatigue. R. 715. Physical examination was normal, but Claimant's mental status examination revealed a flat affect and positive evidence of depression. R. 716-717. Cognitive functioning was adequate. R. 717. Dr. Barber's impressions were depression treated with medication, a history of CFS, and sleep apnea treated with a CPAP machine. R. 718.

Dr Barber also completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical) wherein he opined that Claimant can: occasionally lift and carry up to 100 pounds and frequently lift up to 20 pounds; sit and stand without limitation during an 8 hour workday; use his hands and feet continuously without limitation during an 8 hour workday; never climb ladders, but may frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; never be exposed to unprotected heights, extreme cold, heat; and occasionally be exposed dust, odors, and fumes, and vibrations. R. 722-26. Thus, Dr. Barber opined that Claimant is not significantly limited in any area of physical functioning. R. 727.

4. Dr. Sanchez – May 30, 2008.

On May 30, 2008, Dr. Carlos M. Sanchez conducted a consultative examination of Claimant. R. 752-64. Physical examination was unremarkable and Dr. Sanchez's final impression was CFS. R. 754. Dr. Sanchez also completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical) wherein he opined that Claimant can: lift and carry up to 100 pounds occasionally and 20 pounds frequently; sit, stand, and walk each up to 2 hours at a time and for each a total of three hours; continually use his hands and feet; never climb ladders, but may frequently climb stairs and ramps, balance, stoop, kneel, crouch and crawl; and only has occasional limitations with environmental factors such as unprotected heights, moving mechanical parts, dust or fumes, extreme heat and cold, and vibrations. R. 759-64.

5. Dr. Oatley, Ph.D. – June 11, 2008.

On June 11, 2008, Dr. Jeff Oatley, Ph.D., a psychologist, conducted a consultative psychological evaluation of Claimant. R. 765-71. Dr. Oatley's mental status examination revealed: anxious mood, low self-esteem, and normal energy level; adequate fund of knowledge

and coherent though process; and no concentration, orientation, or memory deficits. R. 766. Standardized testing results reflected a truthful self-presentation. R. 767. Dr. Oatley opined that "[w]eakness and fatigue rather than depressive features are predominant." R. 767 (emphasis added). Dr. Oatley diagnosed Claimant with: rule out carpal tunnel; rule out CFS; rule out sleep apnea; social phobia as indicated by a fear in social performance setting; and dysthymic disorder. R. 767. Dr. Oatley opined that Claimant's prognosis is fair. R. 767.

Dr. Oatley also completed a Medical Source Statement of Ability to Do Work-Related Activities (Mental) wherein he opined that Claimant has: no limitations in his ability to understand, remember, and carry out instructions; mild limitations in the ability to interact appropriately with supervisors, coworkers, and the public; no other limitations. R. 769-70.

C.     Non-Examining Physicians and Psychologists.

1.     Dr. Wise – October 17, 2005.

On October 17, 2005, Dr. Steven L. Wise, Ph.D., a clinical psychologist, completed a non-examining Psychiatric Review Technique ("PRT") and a Mental Residual Functional Capacity Assessment ("MRFC") based upon a medical records review. R. 626-43. Dr. Wise opined that Claimant carries a diagnosis of major depressive disorder, recently euthymic. R. 629. Dr. Wise state that Claimant's limitations result in a moderate restrictions of activities of daily living and difficulties in maintaining social functioning, but only mild difficulties in maintaining concentration, persistence, or pace. R. 636. Dr. Wise stated the most recent disability determination in 2002 was on Claimant's severe depression and nervous, restricted affect as reported by Dr. Oh. R. 638. As of October of 2005, Dr. Wise opined that Claimant being treated with medication for his depression, displayed pleasant, cooperative, and normal

-11-

affect.  R. 638.  Recent treatment notes from Dr. Oh suggest that he is doing well, although he remains anxious and depressed.  R. 638.  Mental status examination revealed relevant, coherent thoughts, and good concentration and memory.  R. 638.  Dr. Wise statement that Claimant's sleep apnea issues appear more dependent on CPAP treatment than psychological factors.  R. 638.  Ultimately, Dr. Wise opined that Claimant's depression "appears somewhat improved based on current [medical records]."  R. 638.

In the MRFC, Dr. Wise opined that Claimant was not significantly limited in any area of functioning except for moderate limitations in the ability to maintain sustained concentration and persistence, and in the ability to set realistic goals or make plans independently of others.  R. 640-41.  Dr. Wise stated that medical improvement had occurred with Claimant's depression and he no longer evidences the severe concentration problems evidenced in 2002.  R. 642.  Claimant displays fewer symptoms and very few severe symptoms of depression.  R. 642.  Dr. Wise opined that Claimant can perform simple tasks.  R. 642.

2.      Dr. Bancks – October 21, 2005.

On October 21, 2005, Dr. Nicholas H. Bancks, a board certified radiologist, completed a non-examining Physical Residual Functional Capacity ("RFC") assessment based upon a medical records review.  R. 644-51.  Dr. Bancks stated that the medical records revealed diagnoses of obstructive sleep apnea and other complaints of fatigue.  R. 644.  Dr. Bancks opined that Claimant can: lift and carry up to 50 pounds occasionally and 20 pounds frequently; sit, stand, and walk each about 6 hours in an 8 hour work day; and Claimant is limited in pushing or pulling with the upper extremities.  R. 645. Dr. Bancks based his opinions on the medical records showing that Claimant's fatigue had improved through the use of the CPAP machine.  R. 645.

Dr. Bancks opines that CFS diagnosis is <u>not a tenable diagnosis</u> and there has been psychological medical improvement.  R. 645.

      3.  Dr. Bee – April 5, 2006.

On Dr. Val Bee, a psychologist and non-examining state agency consultant, completed a PRT and MRFC based upon a medical records review.  R. 652-669.  Dr. Bee opined that Claimant suffers from an affective and anxiety related disorder.  R. 652.  Dr. Bee opined that Claimant's affective disorder is characterized by sleep disturbances, difficulty concentrating, and major depression, which is in partial remission.  R. 656.  Dr. Bee stated that Claimant also has a panic disorder.  R. 657.  Dr. Bee opined that Claimant's impairments result in moderate difficulties maintaining concentration, persistence, or pace, and mild difficulties with activities of daily living and maintaining social functioning.  R. 662.   Dr. Bee stated the following:

> The longitudinal record shows a long history of major depression associated with chronic fatigue.  Initial [disability award] was 1999.  At review in 6/02, treating psychiatrist indicated that [C]laimant remained depressed and anxious with decreased concentration and psychomotor activity.  Opined that he could do "some" work at home with computer.
>
> Currently, . . . although [C]laimant still exhibits depressed and anxious mood, thinking is relevant and coherent and concentration and memory are good.  Competent to manage funds.  Opinion regarding [physical] residual capabilities was withheld.  Treatment notes during the past year reflect good control of depression symptoms.  "Doing well", benign mental status, has some mild anxiety and occasional sleep problems.
>
> Records from Dr. Wahba in 2004 indicate that [C]laimant was sleeping well at night, felt refreshed upon arousal, CFS improved.  Orthopedic notes in 2004 show significant physical activities.  Using a chain saw over a period of three weeks during hurricane season, using hands a lot, lifting, doing yard work, etc.

> Improvement has been demonstrated with respect to [C]laimant's depression, and condition does not meet or equal a listing at this time.

R. 664. Thus, Dr. Bee opined that Claimant had medically improved from his status in 2002. R. 664.

In the MRFC, Dr. Bee opined that Claimant is moderately limited in the ability to maintain attention and concentration for extended periods, to complete a normal workweek without interruption from psychologically based symptoms, and to set realistic goals. R. 666-67. Dr. Bee opined that all other areas of mental functioning were not significantly limited. R. 666-67. Dr. Bee concluded:

> Claimant appears to have an adequate capacity for understanding and memory. His depression and anxiety symptoms may still cause occasional lapses in concentration and efficiency, but [C]laimant appears mentally capable of well structured task activity. Social interaction is appropriate. Daily adaptive skills are essentially preserved. Given time on rolls, may benefit from goal setting assistance.

R. 668. Thus, Dr. Bee opined that Claimant was capable of, and may well benefit from, a well structured work environment. R. 668.

4.     Dr. Brigety – June 1, 2006.

On June 1, 2006, Dr. Reuben E. Brigety, an obstetrician/gynecologist and non-examining state agency consultant, completed an RFC based upon a medical records review. R. 677-84. Dr. Brigety opined that Claimant has a primary diagnosis of obstructive sleep apnea and a secondary diagnosis of CFS. R. 677. Dr. Brigety opined that Claimant: can lift or carry up to 50 pounds occasionally and 20 pounds frequently; can sit, stand, and/or walk each about 6 hours in an 8 hour workday; and is limited in pulling or pushing in the upper extremity. R. 678. Dr. Brigety

based his conclusions upon Claimant's diagnosis of CFS, a sleep study documenting obstructive sleep apnea, improved CFS, and a May 22, 2006 consultative examination by Dr. Carpenter. R. 678-79. Other than only being able to occasionally climb ladders and stairs, Dr. Brigety opined that Claimant has no further physical limitations. R. 679-84.

     D.    <u>Testifying Non-Examining Physician and Psychologist</u>.

At the September 10, 2008 hearing, the ALJ elicited testimony from two non-examining medical professionals, Dr. Anne Edith Winkler, a rheumatologist, and Dr. Carlos Kronberger, a psychologist, who completed medical records reviews. R. 852-80. The ALJ completed two Medical Source Statements of Ability to Do Work-Related Activities (Physical and Mental) based on their respective testimony. R. 796-802.

     1.  Dr. Winkler.

Dr. Winkler opined that Claimant carries a diagnosis of sleep apnea, carpal tunnel syndrome (resolved), and depression, but she suggests that Claimant does not have CFS. R. 854. Dr. Winkler testified that "from reviewing the records, <u>I would not be able to affirm that [CFS] is indeed a diagnosis, in part due to somatoform disorder, but also because the testing that has been done . . . more recent testing with the tilt table and some of the other testing did not . . . show results that could be consistent with [CFS]</u>." R. 854 (emphasis added). Dr. Winkler concluded that there is nothing in the record that would confirm CFS. R. 855. Thus, her opinion regarding Claimant's ability to perform work related functions does not include any limitations due to CFS.

Dr. Winkler opined that Claimant: can lift and carry up to 25 pounds occasionally and 20 pounds frequently; can sit and stand for about 6 hours each in an 8 hour workday; has no limitations in sitting; has some limitations in pushing or pulling; will be limited to only

occasionally climbing, kneeling, crouching, crawling, and stooping; has no manipulative limitations; and should only avoid hazards such as machinery. R. 796-99.

        2. Dr. Kronberger.

Dr. Kronberger opined that based upon his review of the medical records, Claimant's mental impairments caused mild restrictions in activities of daily living and social interaction, and moderate limitations in concentration, but only on an occasional basis. R. 800-801, 872-873.

## II. ADMINISTRATIVE PROCEEDINGS.

On December 3, 2008, the ALJ issued a decision finding that Claimant is no longer disabled as of October 1, 2005. R. 28-38. The ALJ made the following significant findings:

1. The most recent favorable medical decision finding that the [C]laimant continued to be disabled is the determination dated June 28, 2002. This is known as the "comparison point decision" or CPD;

2. At the time of the CPD, the [C]laimant had the following medically determinable impairments: an affective disorder with a secondary diagnosis of [CFS]. These impairments were found to result in the residual functional capacity that found the [C]laimant to have the following non-exertional limitations, first noted in the initial favorable decision in 1999; the [C]laimant would be moderately limited in his ability to understand and remember detailed instructions, carry out detailed instructions, maintain concentration and attention for extended periods, and the . . . ability to set realistic goals or make plans independently of others. The [C]laimant was found to be markedly limited in his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods;

3. Through October 1, 2005, the date the [C]laimant's disability ended, the [C]laimant did not engage in substantial gainful activity;

4. The medical evidence establishes that, as of October 1, 2005, the [C]laimant had the following medically determinable impairments: obstructive sleep apnea, depression (affective disorder), and panic

disorder (anxiety disorder);

5. Since October 1, 2005, the [C]laimant did not have an impairment or combination of impairments which met or medically equaled the severity of [any listed impairment];

6. Medical improvement occurred as of October 1, 2005;

7. As of October 1, 2005, the impairments present at the time of the CPD had decreased in medical severity to the point where the [C]laimant had the residual functional capacity to occasional [sic] have moderate limitation in the ability to maintain concentration;

8. The [C]laimant's medical improvement is related to the ability to work because it resulted in an increase in the [C]laimant's residual functional capacity;

9. As of October 1, 2005, the [C]laimant continued to have a sever impairment or combination of impairments;

10. Based on the impairments present as of October 1, 2005, the [C]laimant had the residual functional capacity to perform light work . . . except that he can lift, carry, push, and/or pull twenty-five pounds on an occasional basis and twenty pounds on a frequent basis. He can only occasionally kneel, crouch, crawl, stoop, climb ramps, and climb stairs. The [C]laimant can never climb ladders, ropes, or scaffolds. Non-exertionally the [C]laimant has occasional, moderate limitation in his ability to maintain concentration;

11. Beginning on October 1, 2005, the [C]laimant has been capable of performing past relevant work as an advertising sales representative and an account executive. This work has not required the performance of work-related activities precluded by the [C]laimant's residual functional capacity based on the impairments present as of October 1, 2005; and

12. The [C]laimant's disability ended as of October 1, 2005.

R. 30-37. In his decision, the ALJ did not weigh or even discuss any of the above referenced medical opinions, except those of Drs. Winkler and Kronberger, the non-examining state agency

consultants who testified at the hearing following a medical records review. *See* R. 30-37.[3] The ALJ stated:

> As for the opinion evidence, Dr. Winkler and Kronberger are given great weight in forming [the Claimant's RFC]. This is because they are impartial experts in their respective fields. They formed their opinions after performing comprehensive reviews of the [C]laimant's medical records, and resolved all perceived conflicts raised by the [C]laimant [at the hearing]. As the undersigned <u>cannot find any substantial conflict between their opinions, and the objective evidence</u> the undersigned accepts their expert opinions as to the [C]laimant's functional abilities.

R. 37 (emphasis added). Thus, the ALJ adopted the opinions of the Dr. Winkler and Kronberger in reaching his decision regarding the Claimant's impairments and their resulting functional limitations.

Claimant requested review of the ALJ's decision from the Appeals Council and submitted Dr. Oh's March 10, 2009 opinion as part of his request for review. R. 11, 14. On August 27, 2010, the Appeals Council issued an order denying Claimant's request for review. R. 11-14. In its order, the Appeals Council stated that it had "considered the reasons you disagree with the decision and the additional evidence . . . [but] found that this information does not provide a basis for changing the [ALJ's] decision." R. 11-12. On December 13, 2010, Claimant appealed the final decision of the Commissioner to the District Court. Doc. No. 1.

## III. <u>THE ISSUE.</u>

As mentioned above, the dispositive issue in this case is whether the ALJ erred by failing to weigh the opinions of record. Claimant maintains that the ALJ is required to state with particularity the weight given to the medical opinions of record and the reasons therefor. Doc.

---

[3] As set forth above, the ALJ did not have the benefit of Dr. Oh's March 10, 2009 opinion at the time the decision was issued.

No. 15 at 8 (citing *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987)).  Claimant maintains that the ALJ's failure to do so in this case makes it impossible for a reviewing court to determine whether the ultimate decision is supported by substantial evidence. Doc. No. 15 at 8-11.

In response, "the Commissioner acknowledges that the ALJ <u>should</u> articulate the weight he gives to the different medical opinions of record." Doc. No. 18 at 16 (citing *Winschel v. Commissioner of Social Security*, 631 F.3d 1176, 1179 (11th Cir. 2011)) (emphasis added).    In this case, the Commissioner maintains that the ALJ's failure to state with particularity the weight given to the medical opinions of record is harmless "because the ALJ specifically assigned great weight to the testimony of medical experts, Drs. Winkler and Kronberger, who reviewed the medical evidence of record, including Dr. Oh's records and narrative statements.  .  .  ." Doc. No. 18 at 17.   Thus, because the ALJ did assign great weight to the opinions of two non-examining consultants who reviewed the medical record, the Commissioner maintains that any error is harmless.  *Id.*

## IV.   <u>LEGAL STANDARDS.</u>

### A.   **THE ALJ'S DISABILITY ANALYSIS.**

The Commissioner may terminate a claimant's benefits upon a finding that there has been medical improvement in the claimant's impairment or combination of impairments related to the claimant's ability to engage in substantial gainful activity.  *See* 42 U.S.C. § 423(f)(1).  In order to determine whether to terminate a claimant's benefits, the ALJ must conduct the following multi-step evaluation and determine:

1) Whether the claimant is engaging in substantial gainful activity;

2) If not gainfully employed, whether the claimant has an impairment or combination of impairments which meets or equals a listing;

3) If impairments do not meet a listing, whether there has been medical improvement;

4) If there has been improvement, whether the improvement is related to the claimant's ability to do work;

5) If there is improvement related to claimant's ability to do work, whether an exception to medical improvement applies;

6) If medical improvement is related to the claimant's ability to do work or if one of the first groups of exceptions to medical improvement applies, whether the claimant has a severe impairment;

7) If the claimant has a severe impairment, whether the claimant can perform past relevant work; and

8) If the claimant cannot perform past relevant work, whether the claimant can perform other work.

*See* 20 C.F.R. § 404.1594(f); *Chereza v. Commissioner of Social Security*, 379 Fed.Appx. 934, 938 (11th Cir. May 21, 2010) (unpublished).[4]  "To determine if there has been medical improvement, the ALJ must compare the medical evidence supporting the most recent final decision holding that the claimant is disabled with new medical evidence."  *Chereza*, 379 Fed.Appx. at 938 (citing *McAulay v. Heckler*, 749 F.2d 1500 (11th Cir. 1985)).

**B.     THE STANDARD OF REVIEW.**

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant

_____

[4] Unpublished decisions of the Eleventh Circuit are not binding, but are persuasive authority.

evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord*, *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The District Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord*, *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen*, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied). The District Court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004).

## C.     REMEDIES.

Congress has empowered the District Court to reverse the decision of the Commissioner without remanding the cause. 42 U.S.C. § 405(g)(Sentence Four). To remand under sentence four, the District Court must either find that the Commissioner's decision applied the incorrect law, fails to provide the court with sufficient reasoning to determine whether the proper law was applied, or is not supported by substantial evidence. *Keeton v. Dep't of Health & Human Serv.*,

21 F.3d 1064, 1066 (11th Cir. 1994) (reversal and remand appropriate where ALJ failed to apply correct law or the ALJ failed to provide sufficient reasoning to determine where proper legal analysis was conducted) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1146 (11th Cir. 1991); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)); *Jackson v. Chater*, 99 F.3d 1086, 1090-91 (11th Cir. 1996) (remand appropriate where ALJ failed to develop a full and fair record of claimant's RFC); *accord Brenem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for District Court to find claimant disabled).

This Court may reverse the decision of the Commissioner and order an award of disability benefits where the Commissioner has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993); *accord*, *Bowen v. Heckler*, 748 F.2d 629, 631, 636-37 (11th Cir. 1984). A claimant may also be entitled to an immediate award of benefits where the claimant has suffered an injustice, *Walden v. Schweiker*, 672 F.2d 835, 840 (11th Cir. 1982), or where the ALJ has erred and the record lacks substantial evidence supporting the conclusion of no disability, *Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985). The District Court may remand a case to the Commissioner for a rehearing under sentences four or six of 42 U.S.C. § 405(g); or under both sentences. *Jackson*, 99 F.3d at 1089-92, 1095, 1098. Where the District Court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow the Commissioner to explain the basis for his decision. *Falcon v. Heckler*, 732 F.2d 827, 829 - 30 (11th Cir. 1984) (remand was appropriate to allow

ALJ to explain his basis for determining that claimant's depression did not significantly affect her ability to work).[5]

## V.    ANALYSIS.

### A.    Medical Opinions.

It is undisputed that the ALJ did not state with particularity the weight given to any medical opinion other than to the opinions of the non-examining state agency consultants who testified at the hearing.    That failure alone constitutes reversible error.    *Winschel v. Commissioner of Social Security*, 631 F.3d 1176, 1178-79 (11th Cir. 2011).

Weighing the opinions and findings of treating, examining, and non-examining physicians is an integral part of the process for determining disability.    The Eleventh Circuit recently clarified the standard the Commissioner is required to utilize when considering medical opinion evidence.    In *Winschel v. Commissioner of Social Security*, 631 F.3d 1176, 1178-79 (11th Cir., 2011), the Eleventh Circuit held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor.    *Id*. (citing 20 CRF §§ 404.1527(a)(2), 416.927(a)(2); *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987)).    The Eleventh Circuit stated that ""[i]n the absence of such a statement, it is

---

[5] On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence.  *Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (on remand ALJ required to consider psychiatric report tendered to Appeals Council); *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984) (on remand ALJ required to consider the need for orthopedic evaluation).  After a sentence-four remand, the District Court enters a final and appealable judgment immediately, and then loses jurisdiction.  *Jackson*, 99 F.3d at 1089, 1095.

impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence.'" *Winschel*, 631 F.3d at 1178-79 (quoting *Cowart v. Schwieker*, 662 F.2d 731, 735 (11th Cir. 1981)) (emphasis added). *See also MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986) (failure to state with particularity the weight given to opinions and the reasons therefor constitutes reversible error); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (failure to clearly articulate reasons for giving less weight to the opinion of treating physician constitutes reversible error).[6]

The Commissioner acknowledges that the ALJ failed to comply with this standard, but argues that the error is harmless because the ALJ gave great weight to the opinions of two non-examining physicians. Doc. No. 18 at 16-21. However, it is well established in the Eleventh Circuit that the opinions of a non-examining physician do not constitute substantial evidence on which to base a decision. *Spencer ex rel. Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985). Nevertheless, the Court has considered whether the ALJ's failure in this case is harmless error.

The ALJ failed to state with particularity the weight given to, and the reasons therefor, to twelve (12) medical opinions that were rendered after the Claimant's last disability determination was made. *See* R. 482, 624-25, 626-43, 644-51, 652-69, 670-75, 677-84, 685-727, 729, 752-64, 765-71. In addition, Dr. Oh, Claimant's treating psychiatrist of nearly twenty (20) years, submitted an opinion to the Appeals Council in March of 2009, which conflicts with the opinions of the non-examining physicians relied upon by the ALJ. R. 803-04.[7] "The opinion of a non-

---

[6] Thus, the Commissioner's statement that an ALJ "should" state the weight given to the medical opinions of record is a misstatement of the law.

[7] Absent good cause, the opinions of treating physicians must be accorded substantial or considerable weight. *Lamb*

-24-

examining physician does not establish the good cause necessary to reject the opinion of a treating physician." *Johnson v. Barnhart*, 138 Fed.Appx. 266, 269 (11th Cir. 2005).[8]

In this case, the Court is unable to determine whether the new evidence submitted to the Appeals Council, Dr. Oh's opinion, would render the ALJ's decision erroneous because the evidence was never weighed. However, because the Court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]," it is impossible to determine whether the ALJ's decision is supported by substantial evidence. *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004); *see also Winschel*, 631 F.3d at 1178-79. Accordingly, it is recommend that the case be remanded to the ALJ with directions to state with particularity the weight given to the medical opinions of record, including Dr. Oh's March 10, 2009 opinion, and the reasons therefor.

B.     CFS.

The Court also notes that the ALJ, based upon the opinion of Dr. Winkler, a non-examining physician, failed to accept the Claimant's CFS diagnosis or any resulting functional limitations despite contrary opinions from Claimant's treating and examining physicians. R. 32-33. In *Vega v. Commissioner of Social Security*, 265 F.3d 1214, 1219-20 (11th Cir. 2001), *receded from on other grounds*, 496 F.3d 1253, 1268-69 (11th Cir. 2007), the Eleventh discussed the nature of CFS and corresponding duties of an ALJ confronted with an allegation of disability based on CFS. The Eleventh Circuit stated:

> Vega argues that the ALJ erred in failing to make a finding that she suffered from CFS and erred in failing to credit any of her subjective complaints about fatigue, poor concentration, and

*v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988).

[8] In the Eleventh Circuit, unpublished decisions are not binding but are persuasive authority.

memory difficulties as reasonably attributable to CFS. The Commissioner responds that the medical records' references to fatigue or the Epstein-Barr virus did not constitute a diagnosis of CFS. The Commissioner also argues that Vega failed to provide any credible medical evidence to support any work-related limitations that may have resulted from CFS. We disagree.

The medical records indicate that Dr. Kob and Dr. Yuvienco both diagnosed Vega with CFS. Dr. Yuvienco specifically diagnosed Vega with CFS on September 20, 1993, October 15, 1993, May 19, 1994, October 3, 1994, December 22, 1994, January 4, 1995, and February 6, 1996. In light of Dr. Yuvienco's diagnosis, the ALJ should have acknowledged it in his evaluation and discussed why he disregarded it. The ALJ focused instead on objective neurological and orthopaedic evidence. Moreover, Dr. Yuvienco examined Vega in August 1993, after she had been admitted to the hospital due to sleepiness, fatigue, and weakness. Although the Commissioner maintains that this is not the equivalent of a diagnosis of CFS, a complete review of Dr. Yuvienco's office notes indicates that he referred to Vega's illness as CFS at that time.

In assessing Vega's RFC, it is clear to us that the ALJ did not properly consider the diagnosis of CFS or evaluate the effect the CFS symptoms had on Vega's ability to work. This court has not addressed the nature of CFS and the factors to be considered by the ALJ when evaluating a claim of CFS. Other circuits, however, have remanded cases when the ALJ's conclusions did not fully account for the nature of CFS and its symptoms. *See, e.g, Reddick v. Chater*, 157 F.3d 715, 722-23 (9th Cir.1998) (concluding that the ALJ's approach to the materials, testimony, and reports did not fully account for the nature of CFS or its symptoms); *Sarchet v. Chater*, 78 F.3d 305, 307-09 (7th Cir.1996) (reversing the ALJ because his characterization of the record reflected a misunderstanding of CFS); *Rose v. Shalala*, 34 F.3d 13, 17-19 (1st Cir.1994) (remanding to the ALJ because evidence compelled finding that claimant suffered from CFS).

We agree with the reasoning of our sister circuits, as well as our prior case law, holding that remands are required when an ALJ fails to consider properly a claimant's condition despite evidence in the record of the diagnosis. *See Marbury v. Sullivan*, 957 F.2d 837, 839-40 (11th Cir.1992). This holding applies to a claim of CFS when the claimant submits evidence of a CFS diagnosis.

We note that the Social Security Administration recently concluded that there are no specific laboratory findings that are widely accepted as being associated with CFS. According to Social Security Ruling 99-2p, the hallmark symptom of CFS is the presence of clinically evaluated, persistent or relapsing chronic fatigue that is of new or definite onset and cannot be explained by another physical or mental disorder. Moreover, CFS is not the result of ongoing exertion, is not substantially alleviated by rest, and results in substantial reduction in previous levels of occupational, educational, social, or personal activities. There is no test for CFS. The ALJ appears to have rejected CFS as a diagnosis because there is no definite test or specific laboratory findings to support such a diagnosis. This lack of testing, however, does not preclude the diagnosis of CFS. Because the ALJ ignored the symptoms of CFS, as well as Vega's other subjective complaints regarding symptoms related to CFS, the ALJ did not meaningfully conduct an analysis of the effect of CFS on Vega's ability to work.

*Vega*, 265 F.3d at 1219-20 (emphasis added). Thus, due to the nature of CFS, an ALJ errs if he or she ignores evidence in the record of a diagnosis of CFS, rejects such a diagnosis, or fails to conduct any meaningful analysis of the effect of CFS on a claimant's ability to work based upon the lack of diagnostic testing or specific laboratory findings. *Id*.

In this case, the ALJ stated that Dr. Winkler, whose opinions the ALJ fully adopted, testified that "the records contained mentions of CFS as a diagnosis, but . . . she could not find any objective evidence that would support his diagnosis. . . ." R. 33 (emphasis added). Thus because the ALJ rejected the diagnosis and severity of CFS, he found that "no limitations can be attributed to [that] impairment. . . ." R. 32.

Rather than containing mere "mentions of CFS as a diagnosis," the record contains multiple diagnoses of CFS by four separate treating physicians, Drs. Oh, Robinson, Wahba, and Chaim, including reports that other impairments had been ruled out and explanations of the resulting functional limitations from Claimant's CFS. R. 264, 299, 444, 482, 488, 729, 803-

804.[9] Moreover, three examining consulting physicians, Drs. Carpenter, Graham, and Sanchez agreed with the diagnosis of CFS. R. 672, 711, 754. Accordingly, in addition to the errors set forth above, it is recommended that the Court find that the ALJ did not meaningfully conduct an analysis of CFS and its effect on Claimant's ability to work. *See Vega*, 265 F.3d at 1219-20.[10]

## VI.    CONCLUSION.

Based on the forgoing, the undersigned recommends that the Court:

1.  **REVERSE and REMAND** the final decision of the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) because the decision is not supported by substantial evidence; [11]

2.  Direct the ALJ to state with particularity the weight given to the medical opinions of record, including Dr. Oh's March 10, 2009 opinion, and the reasons therefor;

3.  Direct the ALJ to meaningfully consider the allegation of CFS in accordance with *Vega*, 265 F.3d at 1219-20; and

4.  Direct the Clerk to enter judgment in favor of the Claimant and to close the case.

Failure to file written objections to the proposed findings and recommendations contained in this report within **fourteen (14) days** from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

---

[9] As stated above, these diagnoses and opinions were not weighed by the ALJ.

[10] This error is the likely product of the ALJ's failure to state with particularity the weight given to the various medical opinions of record and the reasons therefor.

[11] Because the undersigned recommends that the Court find that the final decision of the Commissioner is not supported by substantial evidence, it is unnecessary to address the other issues raised by the Claimant.

Recommended in Orlando, Florida on January 23, 2012.

_Greg Kelly_
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

The Court Requests that the Clerk
Mail or Deliver Copies of this Order to:

Richard A. Culbertson, Esq.
Law Office of Richard A. Culbertson
3200 Corrine Dr.
Orlando, FL    32803

John F. Rudy, III
U.S. Attorney's Office
Suite 3200
400 N. Tampa St.
Tampa, Florida            33602

Mary Ann Sloan, Regional Chief Counsel
Dennis R. Williams, Deputy Regional Chief Counsel
Susan Kelm Story, Branch Chief
Christopher G. Harris, Assistant Regional Counsel
Office of the General Counsel, Region IV
Social Security Administration
61 Forsyth Street, S.W., Suite 20T45
Atlanta, Georgia          30303-8920

The Honorable Edward Bayouth Babilonia
Administrative Law Judge
c/o Office of Disability Adjudication and Review
Desoto Building, #400
8880 Freedom Crossing
Jacksonville, Florida   32256-1224